IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Alexandra Chappell Arnette, Blake Emerson Arnette, Emily Scanlon, Carly Brengosz, Alison Frederick, and Ashley James Harrop, | Civil Action No.: |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| Limestone College, Collins Murphy, Janie Cory, and Darrell Parker, | **JURY TRIAL DEMANDED** |
| Defendants. | |

The Plaintiffs, complaining of the Defendants herein, would respectfully show unto the Court and allege as follows:

## JURISDICTIONAL ALLEGATIONS

1.    The incident and events that give rise to this lawsuit took place in Cherokee County, State of South Carolina.

2.    The Plaintiff Alexandra Chappell Arnette, is a citizen and resident of Warren County, State of Missouri.

3.    The Plaintiff Blake Emerson Arnette, is the spouse of Alexandra Chappell Arnette, and is a citizen and resident of Warren County, State of Missouri.  Mr. and Mrs. Arnette were married July 23, 2016.

4.    The Plaintiff Emily Scanlon is a citizen of Gloucester County, State of New Jersey and is a temporary resident of the Country of Australia.

5.    The Plaintiff Carly Brengosz, is a citizen and resident of Kent County, State of Michigan.

6.    The Plaintiff Alison Frederick, is a citizen and resident of St. Louis County, State of Missouri.

7.    The Plaintiff Ashley James Harrop is the spouse of Allison Frederick, and is a citizen and resident of St. Louis County, State of Missouri.  Ms. Frederick and Mr. Harrop were married March 22, 2019.

8.    Upon information and belief, the Defendant Limestone College, is a private co-educational liberal arts college located at 1115 College Drive in Gaffney, South Carolina. Upon further information and belief, Defendant Limestone College is organized and existing under the laws of the State of South Carolina, doing business in the County of Cherokee, State of South Carolina, and operating and institution of higher learning.

9.    Upon further information and belief, one or more of the Defendant entities including Defendant Limestone College, did own, operate, control, direct and/or manage the subject premises where the subject incidents giving rise to the Plaintiffs' lawsuit occurred.

10.    Upon information and belief, the Defendant Collins Murphy, is a citizen and resident of Montgomery County, State of Maryland.  At the time of the incidents giving rise to the Plaintiffs' Complaint, Defendant Murphy was employed by Defendant Limestone College in its athletic and recreation department.

11.    At the time of the incidents giving rise to the Plaintiffs' Complaint, Limestone College acted by and through its agents, contractors, and employees for the purpose of carrying on its business as an institution of higher learning and therefore, it is jointly and severally liable for the negligent acts of its agents, contractors, and employees, including Defendant Murphy, under the theories of non-delegable duty and *respondeat superior*.

12.    Upon information and belief, the Defendant Janie Cory is a citizen and resident of

Cherokee County, State of South Carolina. At the time of the incidents giving rise to the Plaintiffs' Complaint, Defendant Cory was employed by Limestone College as the Director of Human Resources.

13.    At the time of the incidents giving rise to the Plaintiffs' Complaints, Limestone College acted by and through its agents, contractors, and employees for the purpose of carrying on its business as an institution of higher learning and therefore, it is jointly and severally liable for the negligent acts of its agents, contractors, and employees, including Defendant Cory, under the theories of non-delegable duty and *respondeat superior*.

14.    Upon information and belief, the Defendant Darrell Parker is a citizen and resident of Cherokee County, State of South Carolina. At all times relevant, Defendant Parker was employed by Limestone College as the President of the college.

15.    At the time of the incidents giving rise to the Plaintiffs' Complaints, Limestone College acted by and through its agents, contractors, and employees for the purpose of carrying on its business as an institution of higher learning and therefore, it is jointly and severally liable for the negligent acts of its agents, contractors, and employees, including Defendant Parker, under the theories of non-delegable duty and *respondeat superior*.

16.    This action is brought for damages and other appropriate relief pursuant to the statutory and common law of the State of South Carolina, including but not limited to, the Charitable Immunity provisions applicable to non-profit entities pursuant to the South Carolina Tort Claims Act.  The Plaintiffs expressly plead that there were multiple "occurrences" within the meaning of the South Carolina Tort Claims Act.  The Plaintiffs reserve expressly the right to pursue claims related to multiple "occurrences" as related to the recovery of damages under the South Carolina Tort Claims Act.

17.    The Plaintiffs expressly plead that upon information and belief, one or more of the

individual Defendants, as an employee, agent, or contractor and acting within the scope of their employment, engaged in conduct which is alleged to be reckless, willful, and/or grossly negligent within the meaning of South Carolina Code Ann. § 33-56-180.

18.    The Plaintiffs expressly plead that the limitations of recovery pursuant to the South Carolina Tort Claims Act are inapplicable with respect to a finding that any individual Defendant or Defendants acted in a reckless, willful, or grossly negligent manner.

19.    The facts and circumstances alleged herein and giving rise to the Plaintiffs' Complaints occurred in the County of Cherokee, State of South Carolina.

20.    This action is filed pursuant to 28 U.S.C. § 1332 pursuant to diversity of citizenship.

21.    The amount in controversy is alleged to be in excess of the jurisdictional requirement of 28 U.S.C. § 1332, exclusive of interest and costs.

## **FACTS COMMON TO ALL COUNTS**

22.    The relevant and consistent allegations contained in the above Paragraphs are incorporated by reference as if stated verbatim herein.

23.    During the time period of 2011 and 2012, Defendant Murphy was employed by Alderson Broaddus University (hereafter "ABU") in Philippi, West Virginia.  Defendant Murphy was employed as an assistant women's basketball coach and resident director.

24.    Upon information and belief, Defendant Murphy became obsessed with one or more of the women's basketball team players.  Acting on that obsession, Defendant Murphy placed a camera and took photographs of the woman or women therein.

25.    Upon information and belief, a Title IX investigation was initiated by ABU.  ABU failed to discipline appropriately Defendant Murphy for his inappropriate and tortuous conduct.

26.    Upon information and belief, Defendant Murphy was emboldened by the inaction

of ABU. Over the Christmas break of 2011, Defendant Murphy placed micro cameras in the women's dormitory bathrooms and proceeded to upload hundreds, if not thousands, of pictures of the members of the ABU women's basketball team to Pornhub.com and other pornographic websites.

27.    Upon information and belief, in August of 2012, Defendant Murphy was hired by Defendant Janie Cory and with the express knowledge and consent of Defendant Parker, to serve as the intramural and summer conference director at Defendant Limestone College.

28.    Upon information and belief, prior to August of 2012, credible allegations had been levied against Defendant Murphy regarding inappropriate and tortuous conduct towards women that were student or players of institutions of higher learning wherein the Defendant Murphy had been employed.

29.    Upon further information and belief, the credible allegations included obsessive behavior and/or stalking behaviors reported to the administration of a previous employer of Defendant Murphy that resulted in a Title IX investigation and disciplinary action.

30.    Upon information and belief, the Defendants Limestone College, Cory, and Parker, failed to conduct a reasonable investigation of Defendant Murphy as would be expected of reasonable and prudent administrators of a college or university.

31.    Upon further information and belief, the Defendants Limestone College, Janie Cory and Darrell Parker failed to investigate adequately the background of Defendant Murphy, including but not limited to allegations made against him in prior employment.

32.    In October 2012 and September 2013, Defendant Murphy was employed in the athletic and recreation department at Defendant Limestone College such that he had access to the locker room facilities at Defendant Limestone College and had knowledge of

the athletic competitions that took place at Defendant Limestone College.

33.    At all times relevant and within the course and scope of his employment and duties with Defendant Limestone College, Defendant Limestone College provided Defendant Murphy with access to and/or control over the athletic and recreational facilities at Defendant Limestone College, including, but not limited to, the locker room facilities.

34.    Upon information and belief, in October 2012 and September 2013, Defendant Murphy placed a hidden video camera device within a locker room facility of Defendant Limestone College for the purpose of videotaping Plaintiffs, their teammates, and other women student-athletes while the women were showering and in various states of undressing.

35.    Plaintiff Arnette was a student-athlete at Lindenwood University in St. Charles, Missouri playing on the women's field hockey team during the 2012 and 2013 field hockey seasons.

36.    Plaintiff Scanlon was a student-athlete at Lindenwood University in St. Charles, Missouri playing on the women's field hockey team during the 2012 and 2013 field hockey seasons.

37.    Plaintiff Brengosz was a student-athlete at Lindenwood University in St. Charles, Missouri playing on the women's field hockey team during the 2013 field hockey season.

38.    Plaintiff Frederick was a student-athlete at Lindenwood University in St. Charles, Missouri playing on the women's field hockey team during the 2013 field hockey season.

39.    On or about October 28, 2012, Defendant Limestone College hosted a field hockey game between the Limestone College women's team and the Lindenwood women's team.

40.    Plaintiffs Arnette and Scanlon, as members of the Lindenwood University women's field hockey team, traveled to Limestone College for the October 28, 2012 field hockey

game.

41.     On or about September 27, 2013, Defendant Limestone College again hosted a field hockey game between the Limestone College women's team and the Lindenwood women's team.

42.     Plaintiffs Arnette, Scanlon, Brengosz, and Frederick, as members of the Lindenwood University women's field hockey team, traveled to Limestone College for the September 27, 2013, field hockey game.

43.     On or about October 28, 2012 and September 27, 2013, Plaintiffs and their teammates were directed to use the visiting men's locker room facility at Limestone College before and after the game.

44.     While in the locker room facility of Defendant Limestone College, Plaintiffs changed clothes and showered such that they were in various states of nudity and undress while present in the locker room.

45.     Plaintiffs had a reasonable expectation of privacy while dressing, undressing, showering, and changing in the locker room.

46.     On or about October 28, 2012 and September 27, 2013, Plaintiffs were, in fact, videotaped by the camera placed in the locker room by Defendant Murphy while Plaintiffs were in a full state of nudity without their knowledge, permission, or consent.

47.     Upon information and belief, Defendant Murphy left employment with the Defendant Limestone College in October of 2014.

48.     On or about October 18, 2014, Defendant Murphy confessed to the video recording of the women basketball players at ABU.

49.     On or about November 1, 2019, Defendant Murphy was indicted on five felony counts of burglary by a Barbour County, West Virginia Grand Jury.

50.    Defendant Murphy was found to be civilly responsible to victims of his tortuous recordings and dissemination at ABU by a Barbour County, West Virginia jury in September of 2018.

51.    Upon information and belief, at some point in 2019 and/or prior thereto and unbeknownst to the Plaintiffs, the Defendant Murphy caused the videos of the Plaintiffs that were taken in the Defendant Limestone College locker room to be uploaded to, published on, and distributed to internet sites known as Pornhub.com and Xhamster.com and possibly other sites. Upon further information and belief, Defendant Murphy received renumeration for the videos he disseminated to the pornography websites.

52.    Upon information and belief, the Gaffney Police department commenced an investigation regarding the recordings taken in the locker room of the Defendant Limestone College.  During the course of that investigation, Gaffney Police made contact with the victims on or about October of 2019.

53.    In October of 2019, Plaintiffs were first contacted by officers with the Gaffney Police department and informed of the videos, the investigation, and the shocking invasions of their privacy.  Because Defendant Murphy concealed the recording devices used, Plaintiffs could not reasonably have known of the tortuous conduct until they were first put on notice of the same by the Gaffney Police department.

54.    The Plaintiffs expressly plead that, pursuant to South Carolina Code Ann. §15-3-530 and §15-3-535, they first learned of the Defendants' tortuous conduct in October of 2019.

55.    Upon information and belief, Defendant Murphy continues to possess, upload, forward and/or disseminate the nude videos of Plaintiffs obtained from the hidden cameras in the locker room of the Defendant Limestone College.

56.    As a direct and proximate result of the secret and unauthorized videotaping and the dissemination and publishing of the videos to other individuals and the general public on the Pornhub.com and Xhamster.com sites, Plaintiffs have sustained and will continue to sustain, injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

**FOR A FIRST CAUSE OF ACTION**
**INVASION OF PRIVACY**
**WRONGFUL INTRUSTION INTO PRIVATE AFFAIRS IN 2012**
**AS TO DEFENDANTS MURPHY AND LIMESTONE COLLEGE**
**AS TO PLAINTIFFS ALEXANDRA ARNETTE AND EMILY SCANLON**

57.    The relevant and consistent allegations contained in the above Paragraphs are incorporated by reference as if stated verbatim herein.

58.    Defendant Murphy, in his capacity as an employee and agent of Defendant Limestone College, was given access and control over the locker room facilities of the Defendant Limestone College.

59.    In 2012, Defendant Murphy used the access expressly granted to him by the Defendant Limestone College to place a hidden video camera in Defendant Limestone's locker room and captured video and images of Plaintiff Arnette and Plaintiff Scanlon while each was fully nude or in various states of undress.

60.    The secret and unauthorized videotaping in 2012 by Defendant Murphy of Plaintiffs Arnette and Scanlon constitutes an intrusion in to the private affairs of Plaintiffs Arnette and Scanlon.

61.    The intrusion was and is highly offensive, substantial, and unreasonable to a

reasonable person such that it constitutes a blatant and shocking disregard of Plaintiffs' rights.

62.    The secret and unauthorized videotaping by Defendant Murphy was intentional.

63.    As a direct and proximate result of the conduct by Defendants, Plaintiff Arnette has sustained the injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

64.    As a direct and proximate result of the conduct by Defendants, Plaintiff Scanlon has sustained the injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

65.    As a direct and proximate result of the acts and omissions of the Defendants, Plaintiffs Arnette and Scanlon are entitled to recover actual and compensatory damages against the Defendants.

66.    Defendants' conduct amounted to a willful and wanton violation of the privacy rights of Plaintiff Arnette, such that Plaintiff Arnette is entitled to an award of punitive damages.

67.    Defendants' conduct amounted to a willful and wanton violation of the privacy rights of Plaintiff Scanlon, such that Plaintiff Scanlon is entitled to an award of punitive damages.

**FOR A SECOND CAUSE OF ACTION**
**INVASION OF PRIVACY**
**WRONGFUL INTRUSTION INTO PRIVATE AFFAIRS IN 2013**

## AS TO DEFENDANTS MURPHY AND LIMESTONE COLLEGE

68.    The relevant and consistent allegations contained in the above Paragraphs are incorporated by reference as if stated verbatim herein.

69.    In 2013, Defendant Murphy, in his capacity as an employee and agent of Defendant Limestone College, was given access and control over the locker room facilities of the Defendant Limestone College.

70.    Defendant Murphy used the access expressly granted to him by the Defendant Limestone College to place a hidden video camera in Defendant Limestone's locker room and captured video and images of Plaintiffs while each was fully nude or in various states of undress.

71.    The secret and unauthorized videotaping in 2013 by Defendant Murphy of Plaintiffs Arnette, Scanlon, Brengosz, and Frederick constitutes an intrusion in to the private affairs of the Plaintiffs.

72.    The intrusion was and is highly offensive, substantial, and unreasonable to a reasonable person such that it constitutes a blatant and shocking disregard of Plaintiffs' rights.

73.    The secret and unauthorized videotaping by Defendant Murphy was intentional.

74.    As a direct and proximate result of the conduct by Defendants, Plaintiff Arnette has sustained the injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

75.    As a direct and proximate result of the conduct by Defendants, Plaintiff Scanlon has sustained the injuries and damages, including but not limited to anxiety, humiliation,

embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

76.    As a direct and proximate result of the conduct by Defendants, Plaintiff Brengosv has sustained the injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

77.    As a direct and proximate result of the conduct by Defendants, Plaintiff Frederick has sustained the injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

78.    As a direct and proximate resut of the acts and omissions of the Defendants, Plaintiffs Arnette, Scanlon, Brengosz, and Frederick are entitled to recover actual and compensatory damages against the Defendants.

79.    Defendants' conduct amounted to a willful and wanton violation of the privacy rights of Plaintiff Arnette, such that Plaintiff Arnette is entitled to an award of punitive damages.

80.    Defendants' conduct amounted to a willful and wanton violation of the privacy rights of Plaintiff Scanlon, such that Plaintiff Scanlon is entitled to an award of punitive damages.

81.    Defendants' conduct amounted to a willful and wanton violation of the privacy rights of Plaintiff Brengosz, such that Plaintiff Brengosz is entitled to an award of punitive

damages.

82.    Defendants' conduct amounted to a willful and wanton violation of the privacy rights of Plaintiff Frederick, such that Plaintiff Frederick is entitled to an award of punitive damages.

**FOR A THIRD CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN 2012**
**(AS TO DEFENDANTS MURPHY AND LIMESTONE COLLEGE)**

83.    The relevant and consistent allegations contained in the above Paragraphs are incorporated by reference as if stated verbatim herein.

84.    The 2012 conduct of Defendant Murphy, in secretly videotaping Plaintiff Arnette and Plaintiff Scanlon while nude or in various states of undress, was done intentionally to inflict severe emotional distress on Plaintiff Arnette and Plaintiff Scanlon and/or Defendants knew that such distress would likely result from such conduct.

85.    Defendants' 2012 conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious and utterly intolerable in a civilized community.

86.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Arnette has sustained the injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

87.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Scanlon has sustained the injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and

suffering.

88.    The emotional distress caused by Defendants' wrongful conduct was, and is, so severe such that no reasonable person could be expected to endure it.

89.    As a direct and proximate result of Defendants' wrongful and unlawful conduct, Plaintiff Arnette and Plaintiff Scanlon have sustained the injuries and damages set forth more fully above, including serious mental and emotional injuries and distress.

90.    As a direct and proximate result of the acts and omissions of the Defendants, Plaintiffs Arnette and Scanlon are entitled to recover actual and compensatory damages against the Defendants.

91.    Defendants' conduct was willful and wanton and was undertaken in reckless disregard for the rights of Plaintiff Arnette, such that Plaintiff Arnette is entitled to an award of punitive damages.

92.    Defendants' conduct was willful and wanton and was undertaken in reckless disregard for the rights of Plaintiff Scanlon, such that Plaintiff Scanlon is entitled to an award of punitive damages.

**FOR A FOURTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN 2013**
**(AS TO DEFENDANTS MURPHY AND LIMESTONE COLLEGE)**

93.    The relevant and consistent allegations contained in the above Paragraphs are incorporated by reference as if stated verbatim herein.

94.    The 2013 conduct of Defendant Murphy, in secretly videotaping Plaintiffs Arnette, Scanlon, Brengosz, and Frederick while nude or in various states of undress, was done intentionally to inflict severe emotional distress on Plaintiffs and/or Defendants knew that such distress would likely result from such conduct.

95.    Defendants' 2013 conduct was so extreme and outrageous that it exceeded all

possible bounds of decency and was furthermore atrocious and utterly intolerable in a civilized community.

96.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Arnette has sustained the injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

97.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Scanlon has sustained the injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

98.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Brengosz has sustained the injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

99.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Frederick has sustained the injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

100.    The emotional distress caused by Defendants' wrongful conduct was, and is, so severe such that no reasonable person could be expected to endure it.

101.   As a direct and proximate result of Defendants' wrongful and unlawful conduct, Plaintiffs have sustained the injuries and damages set forth more fully above, including serious mental and emotional injuries and distress.

102.   As a direct and proximate result of the acts and omissions of the Defendants, Plaintiffs are entitled to recover actual and compensatory damages against the Defendants.

103.   Defendants' conduct was willful and wanton and was undertaken in reckless disregard for the rights of Plaintiff Arnette, such that Plaintiff Arnette is entitled to an award of punitive damages.

104.   Defendants' conduct was willful and wanton and was undertaken in reckless disregard for the rights of Plaintiff Scanlon, such that Plaintiff Scanlon is entitled to an award of punitive damages.

105.   Defendants' conduct was willful and wanton and was undertaken in reckless disregard for the rights of Plaintiff Brengosz, such that Plaintiff Brengosz is entitled to an award of punitive damages.

106.   Defendants' conduct was willful and wanton and was undertaken in reckless disregard for the rights of Plaintiff Frederick, such that Plaintiff Frederick is entitled to an award of punitive damages.

**FOR A FIFTH CAUSE OF ACTION**
**NEGLIGENT HIRING**
**(AS TO DEFENDANTS LIMESTONE COLLEGE,**
**JANIE CORY AND DARRELL PARKER)**

107.   The relevant and consistent allegations contained in the above Paragraphs are incorporated by reference as if stated verbatim herein.

108.   Upon information and belief, prior to the August 2012 hiring of Defendant

Murphy, credible allegations had been levied against Defendant Murphy regarding inappropriate and tortuous conduct towards women that were student or players of institutions of higher learning wherein the Defendant Murphy had been employed.

109.    Upon further information and belief, the credible allegations included obsessive behavior and/or stalking behaviors reported to the administration of a previous employer of Defendant Murphy that resulted in a Title IX investigation and disciplinary action.

110.    The Defendant Limestone College, Defendant Cory, and Defendant Parker, failed to conduct a reasonable investigation of Defendant Murphy as would be expected of reasonable and prudent administrators of a college or university.

111.    Prior to being hired by Defendant Limestone College, Defendant Murphy engaged in other inappropriate conduct and behavior involving female student athletes.  That inappropriate conduct resulted in investigations by other institution(s) and resulted in his termination.

112.    Defendant Murphy's employment history gave actual or constructive notice to the Defendant Limestone College, Defendant Cory, and Defendant Parker of the reasonably foreseeable risk to female student athletes in employing Defendant Murphy.

113.    Defendant Limestone College, Defendant Cory, and Defendant Parker knew or should have known that their employment of Defendant Murphy created an undue risk of harm to female student athletes.

114.    The risk to female student athletes, including the Plaintiffs, could have been discovered by the Defendants through the exercise of a reasonable investigation and through the exercise of reasonable and prudent employment practices.

115.    Defendant Limestone College, Defendant Cory, and Defendant Parker breached their duty to Plaintiffs and other female student athletes by failing to conform to

reasonable employment practices in investigating a prospective employee despite being on actual or constructive notice that Defendant Murphy posed an undue risk to female student athletes.

116.    The negligent hiring of Defendant Murphy was the direct and proximate cause of the Plaintiffs' injuries and damages as set forth more fully in the foregoing Paragraphs.

117.    As a direct result of the negligent hiring of Defendant Murphy by Defendants Limestone College, Defendant Cory, and Defendant Parker, the Plaintiffs are entitled to recover actual and compensatory damages against the Defendants.

**FOR A SIXTH CAUSE OF ACTION
NEGLIGENT SUPERVISION
(DEFENDANTS LIMESTONE COLLEGE,
JANIE CORY AND DARRELL PARKER)**

118.    The relevant and consistent allegations contained in the above Paragraphs are incorporated by reference as if stated verbatim herein.

119.    Defendant Murphy's conduct of secretly videotaping of the Plaintiffs while totally nude or in various states of undress, was done by Defendant Murphy in the course and scope of his employment with Defendant Limestone College, on the property and premises of Defendant Limestone College, and in furtherance of the business of Limestone College as an institution of higher learning.

120.    Defendant Limestone College, Defendant Cory, and Defendant Parker authorized and directed Defendant Murphy, in the course and scope of his employment, and indeed as a part of the expectation of his employment, to enter and access the locker room facility of Defendant Limestone College wherein female student athletes would be showering and undressing in conjunction with student athletic events hosted by the Defendant Limestone College.

121.    Defendant Limestone College, Defendant Cory, and Defendant Parker had a duty of care to supervise its employees, including Defendant Murphy, with access to areas of the college in which individual privacy rights could reasonably and foreseeably be violated.

122.    Defendant Limestone, Defendant Cory, and Defendant Parker had the duty and the ability to control and supervise the acts or omissions of Defendant Murphy.

123.    Defendant Murphy was acting within the course and scope of his employment and furthering the business of Limestone College when he entered and accessed the locker rooms used by student athletes, and thus the Defendants were able to control and supervise the conduct of Defendant Murphy.

124.    Defendant Limestone College, Defendant Cory, and Defendant Parker breached their duty of care owed to Plaintiffs and other student athletes by failing to supervise Defendant Murphy in the access had to areas of the campus wherein female students would be undressing or showering.

125.    The failure by the Defendant Limestone College, Defendant Cory, and Defendnat Parker to supervise Defendant Murphy enabled the placement of hidden cameras used to make video recordings of Plaintiffs while nude or in the various stages of undressing.

126.    The negligent supervision of Defendant Murphy was the direct and proximate cause of the Plaintiffs' injuries and damages as set forth more fully in the foregoing Paragraphs.

127.    As a direct result of the negligent supervision of Defendant Murphy by Defendants Limestone College, Defendant Cory, and Defendant Parker, the Plaintiffs are entitled to recover actual and compensatory damages against the Defendants.

**FOR A SEVENTH CAUSE OF ACTION**
**GROSS NEGLIGENCE**
**(ALL DEFENDANTS)**

128.    The relevant and consistent allegations contained in the above Paragraphs are incorporated by reference as if stated verbatim herein.

129.    During all times material to the claims herein, the Defendants' acts and omissions amounted to gross negligence, recklessness, and a willful and wanton disregard for the safety and well being of the Plaintiffs Arnette, Scanlon, Brengosz and Frederick.

130.    The reckless, willful and wanton acts of the Defendants include, but are not limited to, those acts or omissions set forth in the foregoing Paragraphs.

131.    As a direct and proximate result of the willful and wanton acts, as well as the gross negligence of the Defendants, Plaintiffs Arnette, Scanlon, Brengosz and Frederick sustained injuries and damages, including but not limited to anxiety, humiliation, embarrassment, damage to self-esteem, difficulties in interpersonal relationships, damage to reputation, serious mental and emotional distress and mental pain and suffering.

**FOR AN EIGHTH CAUSE OF ACTION**
**LOSS OF CONSORTIUM**
**(ALL DEFENDANTS)**
**(AS TO PLAINTIFFS BLAKE ARNETTE & ASHLEY JAMES HARROP)**

132.    The relevant and consistent allegations contained in the above Paragraphs are incorporated by reference as if stated verbatim herein.

133.    The Plaintiff, Blake Emerson Arnette is the spouse of Plaintiff Alexandra Chappell Arnette.   Pursuant to South Carolina Code Ann. § 15-75-20, Mr. Arnette is entitled to

recover damages for Loss of Consortium.

134.    The Plaintiff, Ashley James Harrop is the spouse of Plaintiff Allison Frederick. Pursuant to South Carolina Code Ann. § 15-75-20, Mr. Harrop is entitled to recover damages for Loss of Consortium.

135.    As a direct and proximate result of the acts of negligence, gross negligence, recklessness, willfulness and wantonness of the Defendants described herein, Plaintiffs Arnette and Harrop have suffered the tortious deprivation of their wives' companionship, aid, society, and services, and all other damages, both actual and punitive.

136.    Plaintiffs Arnette and Harrop are entitled to recover damages for Loss of Consortium in an amount as to be determined by this Court.

## DAMAGES

137.    The relevant and consistent allegations contained in the above Paragraphs are incorporated by reference as if stated verbatim herein.

138.    As a direct and proximate result of the willful and wanton acts, as well as the gross negligence of the Defendants, Plaintiffs Arnette, Scanlon, Brengosz and Frederick sustained injuries and damages, including but not limited:

    a.   Anxiety,

    b.   Humiliation;

    c.   Embarrassment;

    d.   Damage to self-esteem;

    e.   Difficulties in interpersonal relationships;

    f.   Damage to reputation;

    g.   Serious mental and emotional distress;

    h.   Mental pain and suffering; and

      i.   Loss of enjoyment of life.

139.   Plaintiffs are entitled to recover actual and punitive damages from the Defendants in an amount as to be determined by this Court.

## **PUNITIVE DAMAGES**

140.   The relevant and consistent allegations contained in the above Paragraphs are incorporated by reference as if stated verbatim herein.

141.   The acts and/or omissions of the Defendants, as stated above, were willful, wanton, and in reckless disregard for the privacy, safety, and well-being of Plaintiffs Arnette, Scanlon, Brengosz, and Frederick.

73.   As a direct and proximate result of the willful, wanton, and/or reckless acts and omissions of the Defendants, Plaintiffs have suffered damages as set forth more fully in for foregoing Paragraphs.

74.   The conduct of the Defendants as set forth above justifies an award of punitive damages for each and every claim of the Plaintiffs as set forth herein.


      WHEREFORE, the Plaintiffs demand a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, and pray for judgment against the Defendants, for actual and punitive damages in an amount to be determined by the jury, for the costs of this action, and for such other and further relief as this court may deem just and proper.

Respectfully submitted,


 s/ Jennifer Spragins Burnett
Jennifer Spragins Burnett, Fed Bar #07994
**HARBIN & BURNETT, LLP**
2124 North Highway 81 (29621)
P O Box 35
Anderson, SC 29622
(864) 964-0333
(864) 964-0930 (fax)
*Attorneys for the Plaintiffs*


Geoff Meyerkord #46556
Tara Knowlton #72342
Geoff Meyerkord Law Firm, LC
2642 Hwy 109 Suite F
Wildwood, MO 63040
Tel. 314-500-6000
Fax. 314-500-2020
geoff@geofflawfirm.com
tara@geofflawfirm.com
*Attorneys for Plaintiffs*

December 8, 2020
Anderson, SC